## NATIVIDAD LOPEZ Y ROS ET AL.
*v.*
## NEW YORK & PORTO RICO S. S. CO.

---

San Juan, Law, No. 424.

A steamship company is not liable for the damages occasioned by the breaking of part of unloading machinery because of a latent defect when it had, within a reasonable time, inspected the machinery, and made reasonably sure that it was in good condition, and able to bear the strain to which it was to be put.

Case tried April 23, 1907.

---

*Mr. Henry F. Hord* and *Mr. Juan Guzman Benitez,* attorneys for plaintiffs.

*Messrs. Pettingill & Leake,* attorneys for defendant.

Instructions by RODEY, Judge:

This was a suit by the plaintiff, as the mother of two minor

children, to recover for the alleged negligent killing of the father of said minors. The right to bring it on the law side of the court rather than in admiralty was sustained on a plea to the jurisdiction. See 2 Porto Rico Fed. Rep. 395.

The facts of the case were about as follows: Deceased was working for a lightering company engaged in lightering from steamships in the harbor of Fajardo, Porto Rico, to the shore and docks. He was employed by the owners of the lighters. On the day of his death he, in company with others, had proceeded to the side of one of defendant's steamships, anchored in the bay, with a large lighter, and was receiving from the steamship piling to be carried to the shore. The piles were lowered by the steamship crane in the usual manner, by being hoisted from the hold, swung over the side of the ship, and dropped gently down into the long lighter, where they were deposited. On the morning in question, before proceeding with the work, the man in charge of the ship's crew carefully examined and tested the crane or derrick, and also its tackle, with a view to ascertaining whether it was sound and fit for use. He had doubts about the strength, although it was apparently perfectly sound, of the chain that was used from the upper point of the crane or derrick arm down to the place where the chains or ropes that encircled the piles were attached to it. In order to be certain to have a chain strong enough to use for this purpose, he sent to another boat in the harbor, belonging to the company, and secured a larger and apparently a much stronger one, which he caused to be examined and tested before using. Then the work was proceeded with and some seven or nine of the large piles were swung up out of the hold and out over the side of the steamship, where they were lowered and deposited in the

lighter, as stated. Deceased was one of four or five men working in the lighter to arrange the piles along its bottom, and unwind the chains or ropes from them when they were lowered. When the eighth or ninth pile, which was apparently of less weight than several of the others that had previously been lowered that morning, was hanging in mid-air above the boat, a link of the chain referred to, which unfortunately had a latent defect, suddenly broke, and the pile dropped on its end in the bottom of the boat. The men at once scampered away for safety, some of them jumping into the sea; but deceased, either not being able to get away, or intending to go under the little poop deck at the prow of the lighter, was caught as he was near the prow, and killed by the pile striking him on the head as it fell. The evidence and the chain, as exhibited in the court, showed conclusively that the defect in the link was of a character that could not, by the exercise of extraordinary care, have been detected.

Under these circumstances, the court instructs the jury to find for the defendant.